UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,                          CR 05-325-RE

        Plaintiff,                          OPINION AND ORDER

    v.

NICKALAS AIL et al.,

        Defendants.

_____

REDDEN, Judge:

      Before the court is defendants' motion (doc. 53) to compel discovery of government

documents related to the authorization and supervision of government informants, and the United

States' motion (doc. 87) to quash defendants' Federal Rule of Criminal Procedure 17(c)

subpoenas duces tecum.  Third-party witnesses David and Teresa Pankratz move (doc. 88) to join

the government's motion, and move (doc. 89) separately to quash defendants' Rule 17(c)

1- OPINION AND ORDER

subpoenas duces tecum. For the reasons set forth below, the court DENIES defendants' motion to compel discovery, GRANTS the United States' motion to quash defendants' Rule 17(c) subpoenas duces tecum, and GRANTS the Pankratzs' motion to join. The Pankratzs' motion to quash Rule 17(c) subpoenas is DENIED AS MOOT.

## I. Background

In August 2005, the United States filed a multi-count indictment against several Portland area "secondhand" merchandise dealers for knowingly buying, selling, and transporting large quantities of stolen retail merchandise in violation of 18 U.S.C. § 2314, and money laundering in violation of 18 U.S.C. § 1956. This case is related to the FBI's earlier investigation and prosecution of two Portland "fencing" organizations involved in buying stolen retail merchandise from individuals, and selling the merchandise out of state. During the course of that investigation, several suspected "boosters" (*i.e.*, suspected thieves) told the FBI that they sold stolen merchandise to Portland area secondhand dealers. The FBI then expanded its investigation into the Portland "secondhand" store market.

During a three-year investigation, the FBI gathered evidence from cooperating witnesses and informants, conducted widespread surveillance activities, executed multiple search warrants, and authorized informant-witnesses to buy and sell stolen merchandise. The FBI also authorized informants to organize and execute hundreds of interstate "theft runs." FBI informants allegedly drove "boosters" to Oregon, Washington, Idaho, and California retail stores to steal merchandise, which they brought back to Portland and sold to secondhand dealers for a small percentage of the retail price. The FBI also employed at least one wholesaler informant, David Pankratz, who

2- OPINION AND ORDER

purchased stolen merchandise from secondhand dealers and sold it for profit online, or to out-of-state dealers. The government admits it was aware that FBI informant-witnesses were engaged in, and profited from criminal activity during the course of the investigation.[1]

## II. Defendants' Motion to Compel Discovery of *In Camera* Documents

In August 2006, defendants moved to compel discovery of all documents related to the FBI's investigation, including internal government documents relating to the scope of the informant's criminal activities and the government's authorization and supervision of those activities. On November 15, 2006, the court held a hearing and the government agreed to provide much of the discovery sought by defendants. The government did object to some of defendants' discovery requests on relevance and privilege grounds.

On January 22, 2007, pursuant to my order, the government delivered to the court for *in camera* review: (1) a copy of the FBI Manual of Investigative Operations and Guidelines (MIOG); (2) records of payments made to the informants; (3) reports of authorized and unauthorized criminal activity by government informants; and (4) concurrence letters prepared by the United States Attorney, authorizing the FBI's use of cooperating witness-informants. Defendants argue they are entitled to discovery of those submissions because the material could be relevant to their entrapment defense, and could lead to the disclosure of impeachment material. Defendants also argue that the *in camera* documents are relevant to their future motion to dismiss based on outrageous government misconduct.

---

[1]Pankratz may have netted more than one million dollars from the resale of stolen merchandise he purchased from secondhand dealers while participating as an informant.

## A. Legal Standards for Criminal Discovery

"There is no general constitutional right to discovery in a criminal case." <u>Weatherford v.</u>
<u>Bursey</u>, 429 U.S. 545, 559 (1977). Nor is there a right to rummage through the government's
files or to obtain unlimited discovery of everything known to the prosecutor. <u>United States v.</u>
<u>Bagley</u>, 473 U.S. 667, 675 (1985). Rather, discovery in a criminal case is governed by a
"patchwork" of statutory rules and constitutional principles. <u>United States v. Fort</u>, 478 F.3d
1099, 1102 (9th Cir. 2007).

Federal Rule of Criminal Procedure 16(a)(1)(E) requires the prosecution to permit a
defendant to inspect documents and objects "within the government's possession, custody, or
control" that are "material to preparing the defense." Documents are "material to preparing the
defense" if they are material to the defendant's "response to the Government's case-in-chief."
<u>United States v. Armstrong</u>, 517 U.S. 456, 462-63 (1996). Thus, discovery is not appropriate
under Rule 16(a)(1)(E) if it relates only to claims challenging the prosecution's conduct of the
case in general. <u>Id</u>. Furthermore, Rule 16(a)(2) recognizes a work product privilege, which
specifically exempts from discovery "reports, memoranda, or other internal documents made by
an attorney for the government or other government agent in connection with investigating or
prosecuting the case." <u>United States v. Fort</u>, 478 F.3d 1099, 1102 (9th Cir. 2007).

Constitutional considerations mandate that the prosecution provide a defendant with all
exculpatory evidence. <u>Carriger v. Stewart</u>, 132 F.3d 463, 479-80 (9th Cir. 1997) (citing <u>Kyles v.</u>
<u>Whitley</u>, 514 U.S. 419 (1995)). Pursuant to <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the

government has a duty to disclose to the defense all information casting a shadow on a

government informant-witness' credibility, including the witness' status as a paid informant, prior

criminal convictions, drug or alcohol use, benefits received by the witness in exchange for

cooperation, personal assets, and tax liability.  United States v. Bernal-Obeso, 989 F.2d 331, 334

(9th Cir. 1993).  A defendant is also entitled to impeachment evidence regarding any government

agent who testifies at trial.  United States v. Henthorn, 931 F.2d 29, 30-31 (9th Cir. 1991).

## B. Analysis

With the exception of the FBI's Manual of Investigative Operations and Guidelines

(MIOG), the *in camera* documents at issue here fall squarely within the scope of the work

product privilege, as they are internal government documents prepared by the U.S. Attorney or

the FBI in connection with investigating or prosecuting the case.  Cf. United States v. Fernandez,

231 F.3d 1240, 1247 (9th Cir. 2000) (Prosecution's evaluation forms and internal memoranda are

not subject to discovery because they are protected by the work product privilege.).  Thus, the

FBI's internal reports of payments to informants, reports of authorized criminal activity,

informant instructions, and concurrence letters prepared in connection with this investigation are

exempt from discovery as "work product" under Rule 16(a)(2).

Furthermore, after careful review of all *in camera* documents submitted by the

government in this case, I find no evidence that is material to defendants' refutation of the

government's case-in-chief.  Defendants' argument that disclosure of FBI records will "shed

light" on the true extent of the FBI's investigation is unpersuasive given the extensive amount of

evidentiary material the government has already provided to the defendants.  If the government's

informant-witnesses testify at trial, the *in camera* materials may be relevant for purposes of impeachment. See Fed. R. Crim. P. 16(a)(2); Fed. R. Crim. P. 26.2; and 18 U.S.C. § 3500.  At this time, defendants' motion to compel government documents related to the credibility of the government's informants is premature.

Defendants point out that although discovery in a criminal case is limited to information that is material to the "defendant's response to the Government's case-in-chief," a defendant may obtain additional discovery if there is a credible showing of "some evidence" that the government has engaged in misconduct which violates due process. Armstrong, 517 U.S. at 470.  Law enforcement conduct violates due process "where government agents engineer and direct the criminal enterprise from start to finish," or where governmental conduct "constitutes, in effect, the generation . . . of new crimes merely for the sake of pressing criminal charges against the defendant." United States v. Ramirez, 710 F.2d 535, 539 (9th Cir. 1983).  Defendants' contend the government's facilitation of transactions involving stolen merchandise meets the threshold of "some evidence" of governmental misconduct so as to compel further discovery.  I disagree.

The standard in Armstrong is a demanding one.  United States v. Siriprechapong, 181 F.R.D. 416, 421 (N.D. Cal. 1998).  The Armstrong Court reasoned, "[t]he justifications for a rigorous standard for the elements of a selective prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim." Armstrong, 517 U.S. at 468.  To obtain discovery in support of a prosecutorial misconduct claim, a defendant must present "clear evidence" rebutting the presumption that a prosecutor has not violated the Constitution.  Id. at 465.  Here, defendants' outrageous governmental misconduct claim is at least roughly analogous

to the selective prosecution claim brought in <u>Armstrong</u>.  As in <u>Armstrong</u>, defendants' claim constitutes an independent assertion that the government has engaged in conduct that violates due process.  Moreover, the defenses of selective prosecution and outrageous governmental misconduct are similarly narrow.  See <u>United States v. Ryan</u>, 548 F.2d 782, 789 (9th Cir. 1976) (The outrageous governmental misconduct defense is limited to conduct that "is so grossly shocking and so outrageous as to violate the universal sense of justice.").  Thus, to obtain discovery in support of an outrageous governmental misconduct claim, a "defendant must present 'clear evidence to the contrary' to the presumption that a prosecutor has not violated the Constitution." <u>Siriprehapong</u>, 181 F.R.D. at 424-25.

Based upon the *in camera* documents and evidentiary materials now before the court, I find that defendants have not demonstrated sufficiently "clear evidence" of outrageous governmental misconduct so as to compel the government to disclose <u>all</u> internal documents related to this investigation.[2]  I find that the *in camera* documents are not material to the defendants' refutation of the government's case-in-chief, or the defendants' motion to dismiss. The *in camera* documents may contain information relevant for impeachment purposes, but those materials will become discoverable only if, and when, the informant-witnesses testify.

### III. Motions to Quash Rule 17(c) Subpoenas Duces Tecum

In February 2007, pursuant to this court's December 4, 3006 Discovery Order, defendants delivered Rule 17(c) subpoenas duces tecum to the U.S. Attorney for service on several

---

[2]If defendants present additional evidence of outrageous governmental misconduct or legal authority during the course of their motion to dismiss that suggests some of the in camera documents may be relevant, I may revisit this conclusion.

government informants, including David Pankratz and his wife. The material sought by defendants falls into four broad categories: (1) tax returns and all financial records reflecting monies paid by the United States to the informants, or earned by the informants as a result of illegal activity between 2001 and 2007; (2) documents reflecting expenditures made by the informants between 2001 and 2007, including credit card records, phone bills, travel receipts, vehicle purchases, purchases of major household items, personal expenditures, and bank account records; (3) documents prepared by the United States and given to the informants summarizing supervision instructions or authorizing informants to conduct illegal activity; and (4) documents prepared by the informants and given to the United States during the course of the investigation.[3] The United States and Pankratzs move to quash defendants' Rule 17(c) subpoenas duces tecum due to their oppressive nature, unlimited scope, and the lack of any showing of relevance.

## A. Standing

As a threshold matter, the court must consider whether the government has standing to quash the subpoenas directed towards the informants. A party to a criminal case has standing to move to quash a subpoena addressed to a third party if the subpoena infringes upon the movant's legitimate interests. United States v. Raineri, 670 F.2d 702, 712 (7th Cir. 1982) (citing In re Grand Jury, 619 F.2d 1022, 1027 (3d Cir. 1980)). A claim of privilege or a proprietary interest in the subpoenaed documents is a legitimate interest sufficient to confer standing. Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975); see also Ponsford v. United States,

---

[3]Notably, defendants' subpoenas include requests for the same documents defendants are seeking through their motion to compel discovery. The Pankratzs' maintain that they are not in possession of any authorization or instruction documents prepared by the government.

771 F.2d 1305, 1308 (9th Cir. 1985) (identifying proprietary interest as a basis for standing).  The

government may have standing to quash a defendant's Rule 17(c) subpoena based "upon its

interest in preventing undue lengthening of the trial, undue harassment of its witness, and

prejudicial over-emphasis on [the witness's] credibility." Raineri, 670 F.2d at 712; but see United

States v. Nachamie, 91 F. Supp. 2d 552, 560 (S.D.N.Y. 2000) (The government's assertion of

standing based on prevention of undue lengthening of trial, undue harassment of witnesses, and

over-emphasis on credibility "cannot be applied uncritically.").

Here, the United States has standing to move to quash the subpoenas directed to potential

witnesses, who are cooperating with the government.  At least some of the documents defendants

seek from informants are protected by the government's work product privilege.  For example,

the defendants seek any documents prepared by the United States and given to the informant-

witnesses summarizing supervision instructions or authorizing informants to conduct illegal

activity, as well as any records prepared by the informants and given to the United States during

the course of the investigation.  These materials fall directly within the scope of the government's

work product privilege, as they are documents prepared by the government or agents of the

government in connection with investigating or prosecuting the case.  See Fed. R. Cr. P. 16(a)(2).

Thus, the United States clearly has standing to object to the production of those documents.

Furthermore, the government has a legitimate interest in avoiding harassment of potential

government witnesses, as well as undue lengthening of the trial and the discovery process.

Defendants' subpoenas encompass an extensive amount of information that is, at best, only

marginally relevant to defendants' motion to dismiss.  For example, defendants seek all tax

9- OPINION AND ORDER

returns and all financial records reflecting monies paid by the United States to the informants, or

earned by the informants as a result of illegal activity between 2001 and 2007. Defendants also

seek all documents reflecting expenditures made by the informants, including credit card records,

phone bills, travel receipts, vehicle purchases, real property transactions, large item receipts, and

bank account records between 2001 and 2007. Production of this material from all of the

informant-witnesses in this case could take months. Given that the government has not decided

which, if any, of its informant-witnesses will testify at trial, the government certainly has a

legitimate interest in avoiding extensive and potentially burdensome discovery of all its

informant-witnesses' financial dealings over the last six years on the remote possibility that

defendants might find something relevant. In any event, the Pankratzs have joined the

government's motion to quash the subpoenas. Since the subpoenas seek financial documents that

belong to the Pankratzs, they clearly have standing to object.

### B. Legal Standards on Motion to Quash Rule 17(c) Subpoenas Duces Tecum

Federal Rule of Criminal Procedure Rule 17(c) provides a defendant with an opportunity

to obtain evidentiary material by subpoena. Bowman Dairy Co. v. United States, 341 U.S. 214,

219 (1951). It is clear, however, that Rule 17(c) was not intended to expand the scope of

criminal discovery under Rule 16, or to provide a broad basis for a "fishing expedition." Id. at

220 n.5; United States v. Mackey, 647 F.2d 898, 901 (9th Cir. 1981). Moreover, the use of Rule

17(c) subpoenas to obtain information solely for impeachment purposes has generally been held

to be insufficient to justify pretrial production of documents in advance of trial. United States v.

Fields, 663 F.2d 880, 881 (9th Cir. 1981).

Rule 17(c) also authorizes a trial court to quash or modify a subpoena that is unreasonable or oppressive.  In general, Rule 17(c) subpoenas require a showing of relevancy, admissibility, and specificity.  United States v. Nixon, 418 U.S. 683, 700 (1974).  The defendant bears the burden of demonstrating a "sufficient likelihood" that the documents sought are material to any issue in the case. Nixon, 418 U.S. at 700.  The mere hope that the documents, if produced, may contain evidence favorable to the defendant's case is not sufficient.  United States v. Bookie, 229 F.2d 130, 133 (7th Cir. 1956).  "Enforcement of a pretrial subpoena duces tecum must necessarily be committed to the sound discretion of the trial court since the necessity for the subpoena most often turns upon a determination of factual issues." Nixon, 418 U.S. at 702.

Defendants have not demonstrated that the informants' tax returns and financial records are relevant to any issue presently before the court.  Whether or not the informants paid taxes, the exact amount of profit the informants realized in this investigation, and their personal financial dealings bear little relation to whether the government's conduct in this investigation was outrageous.  Only if these informants are called as witnesses, will the requested documents become relevant as impeachment material.  Cf. United States v. Giampa, No. 92-CR-437, 1992 WL 296440, at *3 (S.D.N.Y. 1992) (Impeachment materials are subject to pretrial production under Rule 17(c) only if and when the witness testifies at trial.).

Defendants' argue that by allowing Pankratz and other informants to profit from illegal activity, the FBI effectively gave these informants a license to steal, and the informants' financial records are material to whether the FBI properly supervised its informants.  But the exact amount of profit realized by the informants is not material to the propriety of the government's conduct in

11- OPINION AND ORDER

this case. The government's conduct in allowing informants to profit from illegal activity was either outrageous, or it was a proper means of furthering the investigation. Moreover, as evidenced by defendants' detailed records of the informants' profits, it appears they already have much of this information. Further disclosure related to the informants' alleged profits would be cumulative, and defendants cannot use Rule 17(c) as a discovery tool, or a means to conduct a "fishing expedition." Mackey, 647 F.2d at 901.

Finally, the subpoenas would impose an unreasonable and oppressive burden on the informants and the government. Enforcement of the subpoenas would compel the informants to admit that such records exist, and that they are, or are not in possession of the documents. These communications, if made under compulsion, would violate their Fifth Amendment rights. Andresen v. Maryland, 427 U.S. 463, 473-74 (1976) (The Fifth Amendment protects a person from complying with a subpoena if the act of production constitutes a compulsory authentication of incriminating information.). Defendants ask Ms. Pankratz to produce financial records for the past six years although she was not employed by the FBI as an informant. Defendants also request all financial documents related to the Pankratz's income for the past six years, though he worked as an informant for but three years. Furthermore, production of the subpoenaed documents could delay trial for months and I am not persuaded that any of the requested material is relevant to defendants' motion to dismiss, or their defense to the government's case-in-chief.

## IV. Conclusion

For the reasons set forth above, defendants' motion (doc. 53) to compel discovery is DENIED. The United States' motion (doc. 87) to quash defendant's Federal Rule of Criminal

12- OPINION AND ORDER

Procedure 17(c) subpoenas duces tecum is GRANTED.  David and Teresa Pankratz's motion to join in government's motion (doc. 88) to quash Rule 17(c) subpoenas duces tecum is GRANTED.  All pending discovery motions are DENIED AS MOOT, including docket nos. 183, 185, & 186 in CR 05-323-RE; docket nos. 59, 60, 61, & 63 in CR 05-324-RE; docket no. 89 in CR 05-325; docket no. 114 in CR 05-328-RE; and docket nos. 51 & 56 in CR 05-329-RE.

IT IS SO ORDERED.

DATED this 24 day of April, 2007.

James A. Redden
United States District Judge